ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

DANIEL PASTOR (CABN 297948)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    daniel.pastor@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>MILTON JOEL VARELA ARTEAGA,<br><br>    Defendant. | CASE NO. 23-CR-473-CRB<br><br>**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR DETENTION**<br><br>Date:  December 21, 2023<br>Time:  10:30 a.m.<br>Court:  Hon. Alex G. Tse |

## I. INTRODUCTION

Defendant Milton Arteaga is a fentanyl trafficker who has been arrested for possessing large quantities of fentanyl on three occasions in 2023. During a May 11, 2023, search warrant at Arteaga's residence, police found over 1 KG of fentanyl, 2 KG of methamphetamine, and over $70,000 in cash. On June 28, 2023, Arteaga was arrested by police after they found over 2 KG of fentanyl in the trunk of his vehicle and over $12,000 in cash in the backseat. On November 29, 2023, during a search warrant at Arteaga's residence, agents seized over $13,000 in cash from Arteaga's bedroom and over half a kilogram of fentanyl from a Mercedes controlled by Arteaga and his partner. For context, as little as 2 milligrams (0.002 grams) of fentanyl can be a lethal dose depending on a drug user's body weight and drug tolerance.

Arteaga is a serious risk of non-appearance.  He is unlawfully present in the United States and admitted in a recorded interview (on May 11, 2023) that he is a drug trafficker who sold drugs in the Tenderloin almost every day from 6 p.m. in the evenings to 3 a.m. or 4 a.m.  Arteaga, however, is more than a street dealer. The large fentanyl amounts seized from Arteaga and the tens of thousands of dollars in cash seized from his residence and his vehicles on three separate dates over a 6-month period show that he has connections to large fentanyl suppliers and is profiting significantly from the fentanyl trade in the San Francisco Bay Area.  Arteaga is trafficking fentanyl at a time when San Francisco is seeing the highest number of overdose deaths ever recorded in the city—more than 80% of which are linked specifically to fentanyl.[1]



Arteaga now faces a federal charge with a mandatory five-year sentence in prison if he is convicted.  He also faces sentencing guidelines of about 10 years in prison and the virtual certainty of deportation following a criminal conviction.  To ensure his appearance throughout this case, and to protect the community from the deadly drug fentanyl that Arteaga has shown he does not intend to stop selling, the government respectfully requests that Arteaga be detained pending trial.

## II. LEGAL STANDARD

Under the Bail Reform Act, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the

---

[1] *See* Maggie Angst and Christian Leonard, "S.F. Surpasses Deadliest Year for Drug Overdoses.  This is the Grim Toll," *San Francisco Chronicle*, https://www.sfchronicle.com/sf/article/sf-drug-deaths-18553010.php (Dec. 14, 2023).

UNITED STATES' MEMO ISO DETENTION MOT.     2
23-CR-473-CRB

appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a serious flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. *Id.* A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.* The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. 18 U.S.C. § 3142(f)(2)(B).

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Where, as here, there is probable cause that a defendant has violated an offense for which a maximum of ten years in prison or more is prescribed in the Controlled Substances Act, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this presumption, the burden of production shifts to the defendant. *United States v. Hir*, 517 F. 3d 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, however, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighed along with other relevant factors. *Id.*

\\
\\
\\

### III. ARGUMENT

#### A. The Statutory Presumption in Favor of Detention Applies to This Case.

On November 29, 2023, the defendant was arrested for possessing 40 grams or more of a mixture and substance containing fentanyl. The government filed a criminal complaint that was signed by a magistrate. Dkt. 1. Therefore, there is probable cause to believe the defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. Accordingly, the rebuttable presumption applies that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A).

#### B. Arteaga Cannot Overcome the Presumption that He is a Serious Risk of Non-Appearance and a Danger to the Community

Arteaga is a serious flight risk. He is not a U.S. citizen or lawful resident. Rather, he is a 27-year-old from Honduras who is illegally in the United States. Arteaga was removed from the United States on January 31, 2018, yet illegally re-entered the country sometime thereafter. Dkt. 23 at 2. He has no verified employment in this country. By his own account, Arteaga has been in the United States for about 3.5 years. He has the means to leave the country or to move to another area given the tens of thousands of dollars found on him on more than one occasion and over $200,000 dollars that has been deposited into his partner's bank accounts during the past year (see below). In addition to the common-sense inference about where Arteaga's cash came from based on the seizures of large cash amounts along with drugs, Arteaga explicitly told police in a post-*Miranda* statement (on May 11, 2023) that he sold drugs almost most days in Tenderloin and worked the night shift from 6 p.m. to 3 a.m. or 4 a.m.

##### 1. Arteaga Has Been Found in Possession of Large Fentanyl Quantities Three Times in 2023 and over $10,000 in Cash Each Time.

The defendant faces significant prison time if convicted and the virtual certainty of deportation. The evidence—which includes a confession—is strong. *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cr. 1991) (strong evidence of guilt "makes it more likely that he will flee"); *Diaz-Hernandez*, 943 F.3d at 1199 ("defendant posed a voluntary risk of flight" where "defendant had multiple unlawful reentries, was facing a significant prison sentence, and the weight of evidence was heavy against him").

During a May 11, 2023 search warrant at Arteaga's former Oakland residence on 96th Avenue—where Arteaga's partner (the proposed surety) was found with him—police seized:

- Over 2 KG of methamphetamine;
- 1,390 grams of fentanyl powder;
- 199 grams of heroin;
- 36 grams of cocaine;
- 32 grams of cocaine-base (crack);
- 344 blue fake Oxycodone pills;
- 287 rainbow-colored fake Oxycodone pills;
- 83 grams of Xanax; and
- $70,470 in cash.

On June 28, 2023, when police stopped Arteaga's vehicle—which his partner (the proposed surety was driving)—for traffic violations, police found a backpack in the trunk with:

- over 2 KG of fentanyl;
- 224 grams of methamphetamine;
- 85 grams of heroin;
- 45 grams of cocaine base;
- 313 counterfeit Oxycodone pills; and
- 17 grams of Xanax pills.

In the backseat of the car, police found a Nike bag with $12,100 in cash. Arteaga spontaneously told officers that neither his partner nor the child that was with her had anything to with the drugs or the cash in the vehicle. He and his co-defendant Jose Medina Murillo—who was also in the car when it was stopped—were arrested. Arteaga's phone and Medina's phone were also seized by police. On Arteaga's phone, agents found a selfie photo of Arteaga, photos of large quantities of suspected fentanyl and methamphetamine, and chats relating to the distribution of narcotics.

On November 29, 2023, during a federal search warrant at Arteaga's apartment on Bancroft Avenue in Oakland, agents encountered Arteaga and his partner. In Arteaga's bedroom, agents found roughly $13,265 in cash and the keys to a black Mercedes sedan. Arteaga's partner told agents that the black Mercedes was parked around the corner. During a search of the black Mercedes, agents found roughly 531 grams of suspected fentanyl powder.

\\

\\

### C. The Proposed Surety is Not Suitable and No Conditions Will Adequately Mitigate the Risk that Arteaga Will Fail to Appear.

The evidence in this case shows that Arteaga's romantic partner is involved in his drug trafficking. Not only was she present during each of the seizures of drugs and cash described above, agents also found messages between Arteaga and her on her phone in which she confirmed the defendant's understanding of a drug customer's order that was made in English. Dkt. 1 ¶¶ 71-81.

Furthermore, between February 2022 and November 2023, **over $244,000** was deposited into Arteaga's partner's bank accounts. When agents interviewed her during the November 29, 2023 search, she told them that her employment is cleaning houses and that she had not had a paycheck since 2022 when she worked for EA Swings and Panera in Colorado. Between roughly October 20, 2023 and November 17, 2023, a total of about $64,000 was deposited into her bank accounts. On November 6, 2023, two cash deposits in Oakland and San Leandro totaling $49,290 were made to her Bank of America account. During the interview, she also told agents that she owns a white Mercedes SUV that she purchased *with cash*. That white Mercedes SUV is in addition to the black Mercedes whose keys were found in the apartment.

In addition to the large cash amounts seized in each of the three searches described above, the money moving through the proposed surety's bank accounts is substantial. The government believes these financial resources could easily be used by Arteaga to flee if he is released from custody. Location monitoring is not an adequate condition in this case where the defendant has weak ties to the Bay Area and a strong incentive to flee to avoid substantial prison time and likely deportation thereafter. *See United States v. Parodi*, No. CR 08-0083 PJH, 2008 WL 683421, at *2 (N.D. Cal. Mar. 7, 2008) ("In assessing flight, a court may consider that defendant having no visible means of support, no property, who is well known to narcotics officers for some period of time and has ample funds to provide him with a means of absconding is a poor flight risk and a case in which bail is properly denied. Further, in cases with large sums of cash available to the defendant the court may draw the conclusion that the defendant has the means to abscond. A defendant's financial condition and the length of sentence he or she faces are of particular importance in assessing the risk of flight.").

\\

## IV. CONCLUSION

Arteaga cannot overcome the presumption that there are no conditions that will reasonably assure his appearance at court proceedings and the safety of the community.  The Court should order him to be detained pending trial.

DATED:  December 20, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

 */s/ Daniel Pastor*
DANIEL PASTOR
Assistant United States Attorney

UNITED STATES' MEMO ISO DETENTION MOT.    7
23-CR-473-CRB